LAFAYETTE HOTEL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1332.   Promulgated December 15, 1926.

Evidence *held* insufficient to show that leases for which capital stock of $10,000 par value was issued had that or any other value.

*Eldon S. Lazarus, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $1,105 and $920 for the fiscal years 1919 and 1920, respectively. The deficiencies result from the respondent disallowing for each year a deduction of $2,000, representing exhaustion of five-year leases for which the petitioner had issued common stock of a par value of $10,000.

#### FINDINGS OF FACT.

The petitioner is a Louisiana corporation with its principal office at New Orleans. During the years involved in this proceeding it operated a hotel which contained 80 guest rooms and 56 baths.

During the latter part of 1915, or in the early part of 1916, Albert Aschaffenburg, who was a real estate operator, promoter of business enterprises and builder of hotels and apartment houses, began negotiations with Adam Wirth, a builder, an owner of real estate, and a man of considerable means, for a lease on a building which Wirth proposed to construct on property located in the best retail section of the commercial district of New Orleans and near the leading hotel and one of the largest parks in the city.

Wirth's original plans were to erect an apartment hotel to consist of housekeeping apartments. Upon being advised by Aschaffenburg that he would take a lease on the property if the plans were changed and certain adjustments made so that it could be used as a commercial hotel, Wirth modified his plans accordingly. On August 15, 1916, Wirth and Aschaffenburg signed an agreement whereby the upper floors of the building and a portion of the lower floor were

leased by Wirth for a period of five years from October 1, 1916, at a rental of $730 per month for the first three years and $780 per month for the remaining two years. Provision was made for renewal for an additional five years at a monthly rental of $855. On August 25, 1916, the parties signed another agreement whereby an additional part of the lower floor was leased by Wirth for a period of five years at a monthly rental of $75, with the privilege at the expiration of five years of renewing the lease for another five years at the same rental. Inasmuch as the building was not completed, the agreements contained certain provisions relating to plans and specifications for completion. Notes payable on the dates the rent was due and for the amounts due on each date were given by Aschaffenburg at the time the agreements were signed. The agreements also provided that the leased property was to be used for hotel purposes.

Each of the agreements contained a provision that when "Lafayette Hotel Company, Incorporated, is duly established as a corporation, and furniture installed as intended in the building and ready for possession and use to carry on the business under its said title, the said lessor consents and agrees that this lease may and shall be transferred by the said lessee to the said Lafayette Hotel Company, who shall assume all obligations thereunder, especially the payment of the rent notes executed under this lease, and the said Albert Aschaffenburg, individually, shall be released from any and all obligations as lessee."

Some thirty to sixty days prior to August 30, 1916, Aschaffenburg had conferred with some of his acquaintances relative to the formation of a corporation for the purpose of operating a hotel in the building being erected by Wirth.

On August 30, 1916, the proposed company was incorporated under the name of the "Lafayette Hotel Company, Incorporated." The objects and purposes of this corporation were:

To purchase, lease, or otherwise acquire, for cash or on terms of credit, real estate in the City of New Orleans, or elsewhere; to erect thereon hotels or other buildings, and to sell, lease or otherwise dispose of same; to own, lease and operate in the City of New Orleans and elsewhere one or more hotels, and all adjuncts and accessories thereto, including restaurants, bar rooms, barbershops, baths, news and cigar stores, roof gardens, and to furnish amusements therefor; to do and perform any and all things for the pleasure, comfort, convenience and amusement of guests in said hotels; to promote immigration and travel to the City of New Orleans; to own the stocks and bonds of other corporations and particularly of corporations engaged in buying, selling and leasing real estate and hotels and in operating same; and generally to do any and all things necessary, pertinent or convenient to the powers herein and hereby conferred.

The articles of incorporation provided for a capital stock of $20,000, consisting of 200 shares of a par value of $100 per share. The capital stock was divided into 100 shares preferred and 100

shares· common.   The respective rights of the two classes of stock were as follows:

Both kinds or classes of stock shall enjoy the same privileges of voting for the election of officers or any business of the company, the only restriction or qualification being that before any dividends are set apart or paid on the common stock, the holders of the preferred stock must have received in dividends an amount equal to 50 per cent of the amount of the original subscription. When dividends equal to 50 per cent of the amount of the original subscription to the preferred stock shall have been paid, thereafter the common and preferred stockholders shall stand on an equal footing, and such dividends as shall be declared and paid, shall be declared and paid on the total amount of capital stock, to wit, $20,000 or any increase thereof.

Relative to the payment for Aschaffenburg's stock subscription, the articles of incorporation provided:

The subscription to the capital stock of this corporation by Albert Aschaffenburg, being for one hundred shares of stock, of the par value of One Hundred Dollars consists of property, and shall be payable by said Albert Aschaffenburg by the assignment by him to this corporation of certain leases made and entered into between him and Adam Wirth dated the 15th and the 25th days of August, 1916, being for a certain five story brick building situated on St. Charles Street, between South and Girod Streets, consisting of the entire four upper floors or stories, together with a main entrance on the St. Charles Street front and the portion of the ground or first floor described as store No. 3 and 4 adjoining said entrance on the lower or South Street side, with privilege to rear entrance to alley way. This lease is for a term of five years commencing on the first day of October, 1916, and ending on the 30th of September, 1921, at the rate of $730 per month, for the first three years, and $780 per month for the remaining two years, with the privilege for a renewal of another five years. The directors of this corporation hereby appraise the said leases at the value of $10,000 accepting the assignment of same, and authorizing the issuance of said stock to said Albert Aschaffenburg in full payment thereof.

Common stock amounting to $10,000 par value was issued to Aschaffenburg, in accordance with the articles of incorporation, for the leases upon the organization of the corporation, while the preferred stock amounting to $10,000 was issued for cash.

At a special meeting of the board of directors on November 17, 1917, the petitioner corporation by resolution assumed full liability for the payment of the rent notes given by Aschaffenburg to Wirth and obligated itself to pay all rentals due or to become due on the leases assigned to it by Aschaffenburg.

Aschaffenburg was the moving spirit in the organization of the petitioner corporation, and because of his previous success was influential in forming it.   He was president and supervised the operation of the hotel during the first year.

The petitioner, in its returns for the fiscal years 1919 and 1920, deducted $2,000, representing the exhaustion of the leases it had

acquired from Aschaffenburg. These deductions were disallowed by the respondent upon the ground that the leases were acquired for the corporation and without initial cost and had no value for depreciation purposes.

### OPINION.

TRAMMELL: At the hearing the petitioner produced a real estate dealer who claimed that he assisted Aschaffenburg in negotiating the leases. He could recall nothing as to the offers and counter offers made during the several months that the negotiations were in progress. He could tell nothing as to the development of negotiations in the different steps. He testified that in his opinion the leases acquired by Aschaffenburg were worth $10,000 in excess of the rental payments due under them. He also testified that this was a retrospective appraisal and that he did not place a value on the leases in 1916.

Another real estate dealer, who had no personal knowledge of conditions and circumstances existing at the time of the execution or transfer of the lease, testified as to a value substantially the same as the preceding witness, but qualified his testimony to the extent of saying that this value is dependent upon the discount the owner of the lease was willing to accept.

We are asked to find that the leases made after several months of negotiations between men dealing at arm's length and experienced in real estate operations and dealings had a value of approximately 25 per cent in excess of the rentals payable thereunder.

After a consideration of the evidence in the case, we are unable to find that the leases had a value of $10,000 or any other amount in excess of the rentals due thereunder. The rental value of the leased premises as determined by the lessor and the lessee, Aschaffenburg, less than three weeks before the transfer of the leases to the corporation, both parties being familiar with the conditions and circumstances, is stronger evidence than the opinions of expert witnesses who are not shown to have had a personal knowledge of conditions as they existed when the leases were transferred or executed. No evidence was introduced to show that the property had a greater rental value on August 30, when the leases were turned over to the corporation, than it had on August 15 and August 25, when the leases were signed. The leases were not effective until October 1, 1916, which was after the date of the organization of the corporation, and from all the evidence it appears that they were acquired for the purpose of being transferred to the corporation.

*Judgment will be entered for the Commissioner.*